**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HAISOUS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 04286 |
| | ) | |
| STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | | |
| SUGAR BLISS LLC and SUGAR BLISS PALMER HOUSE LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 20 C 05017 |
| | ) | |
| TWIN CITY FIRE INSURANCE COMPANY, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |
| | | |
| STONE PARK ENTERTAINMENT, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 20 C 05021 |
| | ) | |
| LEXINGTON INSURANCE CO., | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| WATSON WOODS HEALTHCARE, INC., d/b/a/ GRANITE CREEK HEALTH AND REHABILITATION CENTER; LA JOLLA SKILLED, INC., d/b/a THE SPRINGS AT PACIFIC REGENT; BIG BLUE HEALTHCARE, INC., d/b/a RIVERBEND POST ACUTE REHABILITATION; LYNNWOOD HEALTH SERVICES, INC., d/b/a LYNNWOOD POST ACUTE REHABILITATION CENTER; LONE STAR MTC, INC.; HEALTHLIFT MEDICAL TRANSPORTATION, INC.; MAVSTAR MEDICAL TRANSPORTATION, INC.; MEDSTAR MEDICAL TRANSPORTATION, LLC; NEW ENGLAND MEDICAL TRANSPORTATION, INC.; BAKORP, LLC; PMDCA, LLC; PMDLAB, LLC; and PMDTC, LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY,<br><br>      Defendant. | No. 21 C 01150<br><br>Judge John J. Tharp, Jr. |

## **ORDER**

This Order applies to four cases: *Haisous, LLC v. State Auto Property and Casualty Insurance Company*, No. 20 C 04286; *Sugar Bliss LLC et al. v. Twin City Fire Insurance Company*, No. 20 C 05017; *Stone Park Entertainment, Inc. v. Lexington Insurance Company*, No. 20 C 05021; and *Watson Woods Healthcare, Inc. et al. v. American Guarantee and Liability Insurance Company*, No. 21 C 01150. For the reasons set forth in the Statement below, the motion for judgment on the pleadings in No. 20 C 04286 [22] is granted in part and denied in part; the Court grants judgment to the defendant on the plaintiff's claims and the case is dismissed with prejudice, but the Court does not deem it necessary to grant a declaratory judgment for the defendant because the Court dismisses Plaintiff's claims with prejudice. The motions to dismiss the remaining cases (Nos. 20 C 05017 [15], 20 C 05021 [13], and 21 C 01150 [16]) are granted, and all claims are dismissed with prejudice. All deadlines are stricken, and any pending motions in all cases are denied as moot. Civil cases terminated.

**STATEMENT**

As a result of the COVID-19 pandemic, many businesses incurred substantial losses because they had to temporarily alter and suspend operations. The plaintiffs in *Haisous, LLC v. State Auto Property and Casualty Insurance Company*, No. 20 C 04286; *Sugar Bliss LLC et al. v. Twin City Fire Insurance Company*, No. 20 C 05017; *Stone Park Entertainment, Inc. v. Lexington Insurance Company*, No. 20 C 05021; and *Watson Woods Healthcare, Inc. et al. v. American Guarantee and Liability Insurance Company*, No. 21 C 01150, attempted to cover their losses by relying on commercial property insurance policies. When those claims were denied, the plaintiffs filed lawsuits against their insurers.[1] The Court has addressed these four cases together in a single order because they are all governed by the same line of Seventh Circuit cases interpreting the meaning of policy language limiting business interruption coverage to losses caused by "direct physical loss of or damage" to property.

All four cases involve similar allegations. The plaintiffs run restaurants (*Haisous*), bakeries (*Sugar Bliss*), a nightclub (*Stone Park*), and healthcare businesses (*Watson Woods*). All of the plaintiffs curtailed their operations in March 2020 due to the COVID-19 pandemic and lost revenue as a result. All but the *Watson Woods* plaintiffs are located in Illinois, and the Court takes judicial notice of the Illinois Governor's March 16, 2020 Executive Order 2020-07 that directed that "all businesses in the State of Illinois that offer food or beverages for on-premises consumption … must suspend service for and may not permit on-premises consumption" and prohibited any "activity that brings together 50 or more people in a single room or a single space at the same time" and the March 20, 2020 Executive Order 2020-10 that mandated temporary closures of nonessential businesses. The *Watson Woods* plaintiffs are located outside of Illinois but similarly allege that they "have suffered substantial financial losses as a result of SARS-CoV-2, COVID-19, the resulting actions and orders of federal, state, and local civil authorities, and the need to mitigate loss and damage." *Watson Woods* Am. Compl. ¶ 1, No. 21 C 01150, ECF No. 6. All of the plaintiffs had commercial property insurance policies that covered business interruptions or lost income caused by "direct physical loss of or damage" to the insured properties.[2] The plaintiffs in *Haisous*, *Sugar Bliss*, and *Watson Woods* also had coverage for losses caused by an order of a civil authority that bars access to the insured's property in response to direct physical loss or damage to another property in the insured property's vicinity.[3] All of the relevant policies require

---

[1] Jurisdiction in each case is premised on diversity of citizenship. 28 U.S.C. § 1332. The pleadings adequately allege diversity and damages in excess of the amount in controversy and no party has disputed those allegations.

[2] The policy coverage language at issue in each case is essentially identical. *Haisous* Policy 33, No. 20 C 04286, ECF No. 1-1 ("direct physical loss of or damage to property"); *Sugar Bliss* Policy 43, No. 20 C 05017, ECF No. 8-1 ("direct physical loss of or physical damage to property"); *Stone Park Entertainment* Policy 25, No. 20 C 05021, ECF No. 1-1 ("direct physical loss or damage"); *Watson Woods* Policy 28, No. 21 C 01150, ECF No. 6-1 ("direct physical loss of or damage to Property"). *See also* note 5, *infra*.

[3] Again, the policy coverage language at issue in each case is substantially similar. *Haisous* Policy 35 (covering "actual loss of Business Income … and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any

3

a direct physical loss or damage to property. The plaintiffs in each case filed claims with their insurers, were denied, and filed these lawsuits.

To survive a motion to dismiss pursuant to Rule 12(b)(6), the plaintiff must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, the Court must view all facts in the light most favorable to the plaintiff and make any reasonable inferences in its favor. *Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d 1035, 1038 (7th Cir. 2021). "The only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mut. Ins. Co. v. Coyle Mech. Supply*, 983 F.3d 307, 313 (7th Cir. 2020). Judgment on the pleadings in favor of the defendant is appropriate when the plaintiff has not stated a claim for relief, there are no genuinely disputed issues of material fact, and it is clear that the defendant is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017).

Under Illinois law,[4] "an insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve

---

Covered Cause of Loss"); *Sugar Bliss* Policy 35, 44 (covering "actual loss of Business Income … when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'" where policy defines "Covered Cause of Loss" as "RISKS OF DIRECT PHYSICAL LOSS"); *Watson Woods* Policy 34-35 (covering losses "resulting from … **Suspension** … caused by order of civil or military authority that prohibits access to the **Location**. That order must result from a civil authority's response to direct physical loss of or damage caused by a **Covered Cause of Loss** to property not owned, occupied, leased or rented by the Insured or insured under this Policy and located within the distance of the Insured's Location …") (emphasis in original).

[4] The plaintiffs agree that Illinois law governs these disputes. In all but *Watson Woods* the policies were issued in Illinois. The policies in *Watson Woods* were issued in Arizona and California but in responding to the motion to dismiss, the *Watson Woods* plaintiffs note that there are not conflicts between the laws of Illinois and the laws of California and Arizona, agree that "the Court may apply the laws of Illinois," and describe the applicable principles of policy interpretation exclusively by reference to Illinois cases. Pls. Resp. to Mot. to Dismiss 2 and n.2, No. 21 C 01150, ECF No 21.

In the wake of the Seventh Circuit's recent rulings (discussed *infra*), however, the *Watson Woods* plaintiffs attempt to backpedal, arguing in response to the insurer's notice of supplemental authority regarding the Seventh Circuit cases that "it has not been established that Illinois law applies." ECF No. 36 at 2. That pronouncement is difficult to square with their acknowledgment that "the Court may apply the laws of Illinois," but there is no need to consider whether the *Watson Woods* plaintiffs waived any argument that Illinois law does not apply (*see, e.g.*, *Lott v. Levitt*, 556 F.3d 564, 567-68 (7th Cir. 2009) (plaintiff waived choice of law argument by relying on Illinois law at motion to dismiss stage and could not raise it in motion for reconsideration)). That is because the *Watson Woods* plaintiffs have not actually reversed course; equivocating that it "may no longer be the case" that there is no conflict, ECF No. 36 at 2, is not sufficient to raise the issue. Under Illinois choice-of-law rules, which this Court must apply when sitting in diversity, "a choice-of-law determination is required only when the moving party has established an actual conflict

a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 223 Ill. 2d 352, 362, 860 N.E.2d 307, 314 (2006); *Cent. Ill. Light Co. v. Home Ins. Co.*, 213 Ill. 2d 141, 153, 821 N.E.2d 206, 213 (2004) ("If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning."). If the language of the insurance policy is unambiguous, it "must be applied as written." *Valley Forge Ins.*, 223 Ill. 2d at 363. Any ambiguities in the text must be "strictly construed against the drafter." *Id.* The text is ambiguous if it is subject to multiple reasonable interpretations; Illinois Courts "will not strain to find an ambiguity where none exists." *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill. 2d 11, 17, 823 N.E.2d 561, 564 (2005).

The plaintiffs in these cases allege that the policy provisions providing coverage for losses caused by physical loss or damage to property can reasonably be construed to encompass losses due to the interruption of their business operations occasioned by the virus and the COVID-19 closure orders. The plaintiffs in *Haisous*, *Sugar Bliss*, and *Watson Woods* also attempt to rely on provisions providing coverage for losses caused by an order of a civil authority that bars access to the insured's property due to direct physical loss or damage to another property in the insured property's area. In a series of recent opinions applying Illinois law, however, the Seventh Circuit has squarely held that a "direct physical loss of or damage to" to property does not include "a business's loss of use of the property without any physical alteration." *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1004-05 (7th Cir. 2021); *Sandy Point Dental*, 20 F.4th at 333; *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 306 (7th Cir. 2021).

None of the plaintiffs adequately allege that their property suffered any physical alteration. To the extent that they (the *Watson Woods* plaintiffs and, less clearly, Stone Park Entertainment) assert that the virus itself physically alters the property where it is found, that argument fails, as the Seventh Circuit also held that the presence of the virus does not qualify as a physical alteration to the property. *Sandy Point Dental*, 20 F.4th at 335 ("Even if the virus was present *and* physically attached itself" to the covered property, it would not "*alter*[] the physical structures to which it

---

between state laws." *Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 729 (7th Cir. 2014) (quoting *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 25, 10 N.E.3d 902, 909 (2014)).

The *Watson Woods* plaintiffs have not identified an actual conflict between Illinois and California law. The single case they cite (from California; no Arizona cases in conflict are identified) denied coverage under an identical provision requiring physical loss or damage to the covered property. The *Watson Woods* plaintiffs say that the case—*Inns by the Sea v. California Mutual Ins. Co.*, 71 Cal. App. 5th 688 (Cal. Ct. App. 2021)—stands for the proposition that the presence of the virus on the property physically damages the property, but not so. Like the Seventh Circuit, the panel in *Inns by the Sea* acknowledged that "it could be possible, in a hypothetical scenario, that an invisible airborne agent would cause a policyholder to suspend operations because of direct physical damage to property," *id.* at 704, but did not hold that the presence of the corona virus on the property itself caused a physical loss of property. *Compare Sandy Point Dental, P.C. v. Cincinnati Ins. Co*, 20 F.4th 327, 334 (7th Cir. 2021) ("Gas infiltration might cause loss of use without any accompanying physical alteration."). There is, in fact, no inconsistency between the holding in *Inns by the Sea* and the Seventh Circuit cases construing the meaning of "physical loss of or damage to property." That is why the Seventh Circuit cited *Inns by the Sea* as supporting authority for its interpretation of this policy language. *See id.* at 333.

attached") (emphasis in original). The *Watson Woods* plaintiffs also allege that they had to physically alter some of their facilities due to the pandemic as well as spacing and quarantine rules. *Watson Woods* Am. Compl. ¶ 73. But if, as the Seventh Circuit has held, the presence of the virus on the property does not cause physical alteration of the property, there is no basis to hold that physical alterations made by the plaintiffs to mitigate the risks posed by the virus are nevertheless "caused" by the virus—those risks are not risks that result from physical alteration of the property by the virus. Put more simply, the ***virus*** didn't rearrange the furniture, the plaintiffs did, and they did so in order to mitigate losses that would otherwise have been caused by the presence of the virus. By the plaintiffs' logic, however, rearranging the furniture serves as both cause of the physical loss of property and as a means of mitigating that loss. The argument has been rightly described as "nonsensical." See *Café La Trova LLC v. Aspen Specialty Ins. Co.*, 519 F. Supp. 3d 1167, 1182 (S.D. Fla. 2021) ("moving furniture and installing partitions" to mitigate COVID-19 risks cannot constitute the "damage" plaintiff asserts to invoke coverage).

In *Sandy Point Dental,* the Seventh Circuit did leave open the possibility that an event that caused no physical alteration to property but nevertheless "renders a property completely uninhabitable" might qualify for coverage. See 20 F.4th at 334 (distinguishing cases in which coverage was upheld where gas infiltration of the property "made physical entry impossible, thus barring all uses by all persons."). To qualify as "complete dispossession," however, the plaintiff must allege not just an inability to use the property in its preferred form, but that the plaintiff was precluded "from using the property for some other … purpose consistent with the closure orders." *Id.* at 335. None of the plaintiffs in these cases, however, alleges that their properties could not be used for any purpose as a result of the virus or the COVID-19 orders. To the contrary, all but Stone Park concede that they continued to operate, albeit in a limited capacity. *See, e.g.*, *Haisous* Compl., ¶ 38 (acknowledging that the restaurants were "allowed to remain open" for takeout services); *Sugar Bliss* Am. Compl. ¶ 20 ("Sugar Bliss continued pick-up and delivery orders"); *Watson Woods* Am. Compl. ¶¶ 74-78 (describing losses from "slowdown[s]" in business activities). While Sugar Bliss Palmer House argues it could not use its location in the hotel for food services, it alleges that its use was "substantially restricted," not that it could not use the Palmer House location for any purpose. *Sugar Bliss* Am. Compl. ¶ 20

As none of the plaintiffs allege any physical alterations to their properties caused by the virus, *Sandy Point Dental*, *Bradley Hotel*, and *Crescent Plaza Hotel* foreclose their policy claims for lost business income due to the COVID-19 pandemic and the related governmental orders curtailing business operations.[5] And even if the plaintiffs' in *Haisous*, *Sugar Bliss*, and *Watson*

---

[5] Haisous says these cases are not binding because the policy language construed in *Sandy Point Dental* covered "physical loss or damage to property" whereas its policy covered "physical loss ***of*** or damage to property." Haisous contends that this language is materially different but does not explain why the presence of the word "of" extends coverage to property loss that has not been physically altered. Moreover, in *Bradley Hotel* the Seventh Circuit applied the analysis in *Sandy Point Dental* to a policy that contained the same coverage formulation as the policy at issue in *Haisous*. See 19 F.4th at 1005 (coverage provision required "direct physical loss of or damage to" covered property). District courts construing the same coverage formulation have followed suit. *See, e.g.*, *Carlisle Banquets Inc. v. Owners Ins. Co.*, No. 21 CV 517, 2022 WL 787935, at *2 (N.D. Ill. Mar. 15, 2022) ("direct physical loss of or damage to property"); *Old Fashioned Pancake House Inc. v. Grange Ins. Co.*, No. 21-cv-00402, 2022 WL 52630, at *2 (N.D. Ill. Jan. 3, 2022)

6

*Woods* could allege physical alterations to neighboring properties (which they did not), they did not adequately allege that a civil authority prohibited access to their respective properties. For example, Haisous initially alleged it lost access to its properties, but it conceded in its response brief that it lost "access [to] its insured premises *for the purpose of operating its business*." Haisous Resp. 8 (emphasis added); *Sugar Bliss* Am. Compl. ¶ 2 ("Compliance with the Illinois Orders *restricted access* to commercial properties other than for 'essential' services[.]") (emphasis added); *Watson Woods* Am. Compl. § 74-76 (alleging that orders by civil authorities relating to hospitals and medical offices caused "slowdown or 'Suspension' of their business activities," not total loss of access). As pertains to the Illinois plaintiffs, the March 20, 2020 Executive Order 2020-10 defined "Essential Businesses and Operations" to include "[r]estaurants and other facilities that prepare and serve food, but only for consumption off-premises." The plaintiffs did not and could not plausibly allege that the government orders barred all access to their properties for all purposes.

The contracts in each case contain exclusions that may also require denial of the plaintiffs' claims, but the Court does not need to reach those issues since the policies do not cover the plaintiffs' losses in the first instance. *See Crescent Plaza Hotel Owner*, 20 F.4th at 309 (holding that a microorganism exclusion would also bar coverage); *Mashallah, Inc. v. W. Bend Mut. Ins. Co.*, 20 F.4th 311, 322 (7th Cir. 2021) ("[W]e conclude that the virus exclusions in the businesses' policies clearly preclude insurance coverage for losses and expenses allegedly caused by the COVID-19 pandemic and government orders issued to stem its tide.").

Coverage having been properly denied, the plaintiffs' bad faith claims are necessarily denied as well.

Accordingly, the defendants' motions to dismiss the operative complaints in *Sugar Bliss*, *Stone Park*, and *Watson Woods* are granted, as is the defendant's motion for judgment on the pleadings in *Haisous*. The dismissals are with prejudice; none of the plaintiffs requested leave to replead in their responses to the motions and amendment would be futile given the controlling interpretation of the applicable policy provisions. *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 812 (7th Cir. 2021) ("A district court does not abuse its discretion by failing to order, *sua sponte*, an amendment to the complaint that the plaintiff never requested.") (cleaned up); *Sandy Point Dental*, 20 F.4th at 335 (affirming denial of leave to amend because "there is no reason to

---

("direct physical loss of or damage to property"). This court therefore finds Judge Barker's assessment of this argument in *Cafe Patachou at Clay Terrace, LLC v. Citizens Insurance Company of America*, No. 1:20-cv-01462-SEB-DLP, 2021 WL 6062958, at *6 (S.D. Ind. Dec. 22, 2021) to be on the mark: "We regard this distinction as being without a difference, and in any event, it is not a distinction that has been recognized as controlling by other courts …"

think that" the plaintiff could allege that "the virus *altered* the physical structures to which it attached") (emphasis in original). Judgment will be entered for the defendant insurers.[6]

Dated: March 31, 2022

John J. Tharp, Jr.
United States District Judge

---

[6] Because the Court grants judgment for the defendant insurer on the plaintiff's claims in *Haisous*, No. 20 C 04286, the Court does not find it necessary to also issue a declaratory judgment.